# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  14-3005** |
| **SETH SMITH, WARDEN** | **SECTION "R"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND STATE PROCEDURAL BACKGROUND[2]

The petitioner, James Thomas, is a convicted inmate currently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[3]  On April 2, 2004, Thomas was charged by bill of information in Lafourche Parish with vehicular homicide of his daughter while under the influence of alcohol and fourth offense operating a vehicle while intoxicated.[4]  The Louisiana First Circuit Court of Appeal summarized the relevant facts of the case as determined at trial as follows:

> On or about February 14, 2004, at approximately 8:30 p.m., Officers Brook Angelette and Kurt Landry (both of the Greater Lafourche Port Commission Harbor Police) left their office in separate police units to conduct street patrol. The two officers were responding to an electrical power outage that had just occurred in the area.  After receiving a dispatch regarding a utility pole, the officers headed toward Louisiana Highway 1 in Lafourche Parish. The officers promptly arrived at the scene of a downed utility pole and electrical wires lying across the highway. Traffic was stalled due to the downed pole and wires. The officers observed an overturned (upside down) 1985 GMC Jimmy utility-style vehicle in a body of water located off the shoulder of Louisiana Highway 1, just south of Louisiana Highway 39. An adult male and a male child (the defendant and his eight-year-old son) walked up the bank toward the highway. The

---

[2]In violation of my briefing order, Record Doc. No. 6, the State failed to produce complete copies of the records from the state trial court and the Louisiana First Circuit Court of Appeal or any copies of the pleadings from the Louisiana Supreme Court. A member of my staff attempted to contact counsel for the respondent on May 8, 2015, and to date, counsel has failed to return the phone call or the voice mail message seeking the additional portions of the state trial and appellate records.  Nevertheless, I find that the partial record, along with my research, is sufficient for the court to address Thomas's petition.

[3]Rec. Doc. No. 5.

[4]St. Rec. Vol. 1 of 5, Bill of Information, 4/2/04. Thomas was also charged under different bills with several misdemeanor offenses, including switched license plate and driving under a suspended license. Id., Hearing Transcript, pp. 4-5, 4/5/04.

officers asked the defendant if anyone else was in the vehicle, and the defendant informed them that his daughter (the eight-year-old victim) was still in the vehicle. The officers ran into the water toward the vehicle. They ultimately pulled the victim, who was restrained in the front passenger seat at the time of their approach, out of the vehicle and took her to the shoulder of the highway.[5]

Officer Angelette attempted to perform CPR on the victim but could not detect any vital signs. The autopsy revealed the victim's cause of death to be a broken neck and severed spinal column, injuries consistent with the victim having been a restrained guest passenger in a vehicle that was involved in a high-impact collision. The defendant's blood-alcohol concentration, determined from a blood sample taken at 10:50 p.m. (on the night of the accident) at Terrebonne General Medical Center, was .24 grams percent.

State v. Thomas, 938 So.2d 168, 171 (La. App. 1st Cir. 2006) (footnote in original).

The charges were severed and the State eventually entered a nolle prosequi on the charge of fourth offense driving while intoxicated.[6]  A jury found Thomas guilty of vehicular homicide on December 16, 2004.[7]  The state trial court sentenced Thomas on February 17, 2005, to twenty (20) years in prison at hard labor with the first year to be served without benefit of parole.[8]

---

[5]"FN1. The identity of the victim will not be disclosed herein. See La. R.S. 46:1844 W."

[6]Thomas, 938 So.2d at 171.

[7]St. Rec. Vol. 2 of 4, Jury Verdict, 12/16/04.  The record provided by the State does not include any of the trial minutes or a complete copy of the trial transcript.  St. Rec. Vol. 2 of 4, Trial Transcript (incomplete), 12/14/04.

[8]St. Rec. Vol. 2 of 4, Felony Sentencing, 2/23/05.

The State filed a multiple offender bill under a different case number, and on May 19, 2005, the state trial court adjudicated Thomas a <u>fourth</u> felony offender, vacated the prior sentence and resentenced Thomas to forty (40) years at hard labor.[9]  The court denied Thomas's motion to reconsider the sentence on May 26, 2005.[10]

On direct appeal to the Louisiana First Circuit, Thomas's appointed counsel asserted these errors:[11] (1) The evidence was insufficient to support the conviction. (2)(a) The multiple offender statute's cleansing period, La. Rev. Stat. § 15:529.1(C), is unconstitutionally vague, and (b) the cleansing period was not properly applied in Thomas's case.

On June 9, 2006, the Louisiana First Circuit affirmed Thomas's conviction, finding no merit in the first claim or the first part of the second claim.[12]  The court found, however, that the State failed to prove that the cleansing period had not lapsed between Thomas's 1979 conviction and the 1995 predicate offense.  Thus, the court reversed the multiple offender adjudication and vacated the sentence, thereby reinstating the original twenty (20) year sentence previously imposed and remanding for a new multiple offender

---

[9]<u>Thomas</u>, 938 So.2d at 171; St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 5/25/05.

[10]St. Rec. Vol. 2 of 4, Trial Court Order, 5/26/05; Motion to Reconsider Sentence, 5/25/05.

[11]<u>Thomas</u>, 938 So.2d at 171.

[12]<u>Id.</u>

proceeding.[13]  The Louisiana Supreme Court denied Thomas's related writ application on April 27, 2007.[14]

On September 10, 2008, while awaiting resentencing, Thomas signed and submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief:[15] (1) The prosecution suppressed material evidence of a road construction contract in the area of the accident that was favorable to the defense. (2) There was newly discovered evidence of the lack of lighting in the area that may have contributed to the crash and impeached the police officer's testimony. (3) Newly discovered photographs of the construction area and marking would have impeached the prosecution's chief witness. (4) The prosecution suppressed material evidence of photographs and other materials that were favorable to the defense. (5) The prosecution used false evidence and testimony regarding accident reconstruction at defendant's criminal trial. (6) Counsel provided ineffective assistance in that he failed to investigate, review and interrogate materials disclosed by the State or interview witnesses. (7) Counsel provided ineffective assistance because he failed to familiarize himself with the scientific evidence and recognize that an expert was needed. (8) He was

---

[13]Thomas, 938 So.2d at 177.

[14]State v. Thomas, 955 So.2d 683 (La. 2007).

[15]St. Rec. Vol. 3 of 5, Uniform Application for Post-Conviction Relief, 9/15/08 (dated 9/10/08).

prejudiced by the publicity of the case and the failure of the state trial court to excuse jurors Badeaux and Naquin for cause.

On April 27, 2009, the state trial court dismissed Thomas's application because Thomas had available remedies through appeal following completion of the multiple offender proceedings.[16]  Thomas did not seek review of that ruling.

As the habitual offender proceedings moved forward, the State withdrew the 1979 predicate offense from the multiple bill.[17]  On July 22, 2010, the state trial court adjudicated Thomas a <u>third</u> felony offender, vacated the original sentence, and resentenced him to 35 years in prison at hard labor.[18]

On appeal from the adjudication and resentencing, Thomas's counsel argued that the State failed to present authentic evidence to prove the 1996 predicate offense of criminal mischief from Texas.[19]  Thomas pro se argued that the 1996 Texas conviction was not equivalent to a felony in Louisiana for use in the multiple bill.[20]

---

[16]St. Rec. Vol. 4 of 5, Trial Corut Judgment, 4/27/09; Reasons for Judgment, 4/27/09.

[17]State v. Thomas, No. 2010-KA-1926, 2011 WL 3806127, at *1 (La. App. 1st Cir. Aug. 10. 2011); State v. Thomas, 112 So.3d 875, 876 (La. App. 1st Cir. 2012); St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2012-KA-0177, p.3, 12/28/12.

[18]Thomas, 2011 WL 3806127, at *1; Thomas, 112 So.3d at 876; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2012-KA-0177, p.3, 12/28/12.

[19]Thomas, 2011 WL 3806127, at *1.

[20]Thomas, 2011 WL 3806127, at *1.

In its unpublished opinion issued on August 10, 2011, the Louisiana First Circuit affirmed Thomas's multiple offender adjudication.[21]   The appellate court rejected Thomas's pro se claim as meritless and found that the claim asserted by counsel had not been preserved for appellate review, citing La. Code Crim. P. art. 841(A) and La. Code Evid. art. 103(A)(1).[22]   The court, however, on its errors patent review, found that the state trial court failed to impose the sentence in conformity with the habitual offender statute because the judge failed to consider the mandatory fine, limitations on parole, probation or suspension of sentence and other required rehabilitative programs, any of which may have impacted the sentence.   The court, therefore, vacated the multiple offender sentence and remanded the matter for resentencing.

On December 12, 2011, in accordance with the remand order, the state trial court resentenced Thomas as a third offender to serve thirty-five (35) years in prison at hard labor, with one year to be served without benefit of parole, and ordered Thomas to pay a $2,000 fine and participate in and successfully complete a court-approved substance abuse program.[23]

---

[21]Thomas, 2011 WL 3806127, at *1.

[22]Thomas, 2011 WL 3806127, at *2-3.

[23]Thomas, 112 So.3d at 877; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2012-KA-0177, pp. 3-4, 12/28/12.

Thomas's appointed appellate counsel filed a brief with the Louisiana First Circuit which included a request for an errors patent review, a motion to withdraw as Thomas's counsel, and a statement indicating that counsel had found no non-frivolous appealable issue in connection with Thomas's resentencing, all pursuant to Anders v. California, 386 U.S. 738 (1967), and State v. Jyles, 704 So.2d 241 (La. 1997).[24]

On December 28, 2012, the Louisiana First Circuit denied the motion to withdraw after finding a patent error in the sentencing.[25] The court found that its prior remand ruling was contrary to Louisiana Supreme Court precedent prohibiting imposition of the fine and other requirements in the underlying statute when a habitual offender sentence is imposed.[26] The appellate court recalled its prior remand order that required the additional sentencing restrictions, vacated the new sentence and reinstated the trial court's July 22, 2010, sentence which was thirty-five (35) years in prison at hard labor as a third felony offender.[27]

On February 15, 2013, Thomas submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief: (1) The

---

[24]St. Rec. Vol. 5 of 5, Appeal Brief, 2012-KA-0177, 3/19/12.

[25]Thomas, 112 So.3d at 877, 878; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2012-KA-0177, pp. 4, 5, 12/28/12.

[26]Thomas, 112 So.3d at 880; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 2012-KA-0177, p. 10, 12/28/12.

[27]Id.

habitual offender proceeding should have been filed under the same case number as the substantive charges. (2) Newly discovered evidence of the lack of lighting in the vehicular crash area may have contributed to the crash and impeached the police officer's testimony. (3) Newly discovered photographs of the construction area would have impeached the prosecution's chief witness. (4) Newly discovered photographs of the lack of markings in the construction area would have impeached the prosecution's chief witness. (5) Counsel provided ineffective assistance in that he failed to investigate, review and interrogate materials disclosed by the State. (6) Counsel provided ineffective assistance in that he failed to investigate the lack of lighting in the area. (7) Counsel provided ineffective assistance in that he failed to familiarize himself with the facts of the case and the lack of warning signs. (8) Counsel provided ineffective assistance in that he failed to familiarize himself with the scientific evidence and recognize that an independent expert witness was needed. (9) The prosecution suppressed and withheld material evidence of photographs and other materials to show that the State's star witness fabricated and tampered with evidence. (10)  The prosecution suppressed and withheld material evidence of a road construction contract in the area of the accident that was favorable to the defense. (11) The prosecution used false evidence and testimony regarding accident reconstruction at defendant's criminal trial and allowed other parties to alter the crime scene by post-accident repairs.

The state trial court denied relief on July 19, 2013.[28]  The court held that Thomas waived review of the first claim by his failure to file a motion to quash as required under La. Code Crim. P. arts. 521 and 535.D.  The court found no merit in the remaining claims because Thomas failed to establish that the allegedly new or withheld evidence and counsel's failure to utilize that evidence was prejudicial, since presentation of the evidence would not have changed the guilty verdict.  The court also determined that Thomas failed to establish perjury in the testimony of the State's witnesses.

The Louisiana First Circuit denied Thomas's writ application without stated reasons on December 20, 2013.[29]  On October 3, 2014, the Louisiana Supreme Court denied Thomas's related writ application pursuant to La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (1995), for seeking untimely post-conviction review.[30]

II.   FEDERAL HABEAS PETITION

On December 24, 2014, Thomas submitted a federal petition for habeas corpus relief to the clerk of the United States District Court for the Middle District of Louisiana.

---

[28]Rec. Doc. No. 5-2, pp. 6, 7-14 (Judgment, Reasons for Judgment).  The state court record does not contain a copy of these rulings.

[29]Rec. Doc. No. 5-2, p. 19.  The state court record does not contain a copy of this ruling.

[30]State ex rel. Thomas v. State, 149 So.3d 790 (La. 2014); Rec. Doc. No. 5-2, p. 21.

It was subsequently transferred to this court.[31]  After correction of certain deficiencies, on January 26, 2015, the clerk of this court filed the petition in which Thomas asserted the following grounds for relief:[32] (1) The habitual offender proceeding should have been brought under the same case number as the substantive charges. (2) He received newly discovered evidence on September 26, 2007, of the lack of lighting in the area that may have contributed to the crash and impeached the police officer's testimony. (3) He received newly discovered photographs on February 5, 2005, of the construction area that would have impeached the prosecution's chief witness. (4) He received newly discovered photographs on February 14, 2005, of the lack of markings in the construction area that would have impeached the prosecution's chief witness. (5) Counsel provided ineffective assistance in that he failed pretrial to investigate, review and interrogate materials and investigative reports disclosed by the State. (6) Counsel provided ineffective assistance in that he failed pretrial to investigate the lack of lighting in the area. (7) Counsel provided ineffective assistance in that he failed pretrial to familiarize himself with the law and facts of the case and failed to investigate the lack of warning signs in the area which would have led to discovery of the construction contract that could have been used to impeach the State's witnesses. (8) Counsel provided ineffective assistance in that he

---

[31]Rec. Doc. Nos. 1-3.

[32]Rec. Doc. No. 5.

failed to familiarize himself with the scientific evidence and recognize that an independent expert witness was needed. (9) The prosecution suppressed and withheld material evidence of photographs and other materials to show that the State's star witness fabricated and tampered with evidence. (10)  The prosecutor failed to discover and disclose evidence of a road construction contract in the area of the accident that was favorable to the defense. (11) The prosecution used false evidence and testimony regarding accident reconstruction at defendant's criminal trial and allowed other parties to alter the crime scene by post-accident repairs.

The State filed an answer and memorandum in opposition to Thomas's petition conceding that the petition was timely filed and that review of the claims was exhausted in the state courts.[33]  The State asserts a "procedural objection" to review by this court on grounds that the claims were fully litigated in the state courts and argues that Thomas has failed to allege any error that would entitle him to federal habeas relief.[34]

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[33]Rec. Doc. No. 9.

[34]Rec. Doc. No. 9, p. 6.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[35] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Thomas's petition, which, for reasons discussed below, is deemed filed in this court on December 16, 2014.[36]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that the petition is timely and that state court review was exhausted.  The State urges a "procedural objection" to review of Thomas's petition,

_____

[35]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to a court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Thomas's petition was filed by the clerk of this court, on January 26, 2015, following correction of a form deficiency and payment of the filing fee. Thomas dated the signature on his original handwritten petition on December 16, 2014. This is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 847.

but fails to identify any particular procedural default.  However, the record reflects that relief on Thomas's claims was denied by the Louisiana Supreme Court pursuant to La. Code Crim. P. art. 930.8 and State ex rel. Glover.

Because the State was not specific in its invocation of the procedural defense, I hereby give Thomas express notice that the court is considering the issue of his procedural default, a defense suggested in the State's memorandum in opposition.  Fisher v. Texas, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).  Accordingly, to the extent necessary, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**.  Magouirk, 144 F.3d at 348.

IV.   PROCEDURAL DEFAULT

The last reasoned opinion of any state court addressing Thomas's claims was from the Louisiana Supreme Court, when it denied relief, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover indicating that Thomas sought untimely post-conviction review.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v.

Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, 562 U.S.

15

307, __, 131 S. Ct. 1120, 1127 (2011); <u>Glover</u>, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) <u>Beard v. Kindler</u>, 558 U.S. 53, 60-61 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  <u>Beard</u>, 558 U.S. at 60 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

The last reasoned decision on the issue was the judgment of the Louisiana Supreme Court relying exclusively on La. Code Crim. P. art. 930.8 and <u>State ex rel. Glover</u>, state law independent of any federal grounds.  It is well settled in the Fifth Circuit that denial of relief premised on the untimeliness of a claim under La. Code Crim. P. art. 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine.  <u>Glover</u>, 128 F.3d at 902.  The same is true in this case.

These provisions are also adequate to bar review of Thomas's claims.  La. Code Crim. P. art. 930.8 provides a two-year period for filing applications for post-conviction relief in the state trial court, and that period runs from the date the applicant's judgment of conviction became final under Louisiana law.  In accord with <u>State ex rel. Glover</u>, the Louisiana Supreme Court and appellate courts can deny post-conviction relief as untimely under La. Code Crim. P. art. 930.8, even if the lower court addressed the merits of the claims or did not consider timeliness.  <u>State ex rel. Glover</u>, 660 So.2d at 1201-02.

The Louisiana Supreme Court has clarified that a conviction becomes final under Louisiana law when a defendant does not seek timely review in that court following direct appeal or timely rehearing of that court's judgment.  State ex rel. Hall v. State, 871 So.2d 1071 (La. 1999) (citing La. Code Crim. P. art. 922(B)[37] and La. S. Ct. R. X§5(a)[38]). The Louisiana Supreme Court has repeatedly held that resentencing proceedings do not revive an otherwise final conviction or restart the limitations period set forth in La. Code Crim. P. art. 930.8.  State v. Brumfield, 152 So.3d 870, 871 (La. 2014) (citing State ex rel. Rushing v. Whitley, 662 So.2d 464 (La. 1995)).  Relying on state law, the Louisiana Supreme Court applied the prohibition in La. Code Crim. P. art. 930.8 to prevent review of Thomas's post-conviction claims initiated in February 2013, which was almost six years after the Louisiana Supreme Court denied his writ application following the original appeal on April 27, 2007.  See La. Code Crim. P. art. 922(A).  It is not within the province of a federal habeas court to reexamine the state court's interpretation of its own state law.  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999).

The United States Fifth Circuit has also squarely held that, because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate"

---

[37]La. Code Crim. P. art. 922(B) provides that a criminal judgment becomes final when the fourteen (14) day delay for applying for a rehearing expires after issuance of the appellate court's opinion.

[38]Under La. S. Ct. Rule X§5, a writ application is timely when it is filed in that court within thirty (30) days after issuance of the appellate court's opinion or after denial of a timely filed application for rehearing by an appellate court.

rule, i.e., it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Glover, 128 F.3d at 902 (citing Dugger v. Adams, 489 U.S. 401, 410 n.6 (1989); Johnson v. Miss., 486 U.S. 578, 587 (1988); Amos, 61 F.3d at 339); Morris v. Cain, No. 06-30916, 2008 WL 3876479, at *1 (5th Cir. 2008); Pineyro v. Cain, 73 F. App'x 10, 11 (5th Cir. 2003).

The state court's ruling was based on Louisiana law setting forth procedural requirements for the timely presentation of post-conviction claims. See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The Louisiana Supreme Court's reasons for denial of Thomas's claims was independent of federal law and adequate to bar review of his claims in this court.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Fisher, 169 F.3d at 301 (citing Coleman, 501 U.S. at 748-50); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>., at 486.

In this case, Thomas has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  The record does not support a finding that any factor external to the defense prevented Thomas from asserting these claims in a procedurally proper manner.  The record reflects no action or inaction by the State which prevented Thomas or his counsel from properly asserting these claims in the state courts.

Thomas has failed to present any cause, other than his own delay, for his failure timely to pursue his claims.  Thomas indicates that he discovered the evidence he now relies upon in 2005 (or as late as 2007), during the preparations for his family's wrongful death civil suit against the State and other entities.  He implicitly recognizes that he could have brought his claims, including those related to the newly discovered and withheld evidence and ineffective assistance, at an earlier time.  In fact, in 2009 Thomas was advised to pursue his claims on appeal when the state trial court denied his premature application for post-conviction relief.

Despite this advice, Thomas did not assert the ineffective assistance of trial counsel claims on direct appeal, which under Louisiana law was the appropriate time to assert the claim while he was represented by counsel.  See State v. Dauzart, 89 So.3d 1214, 1221 (La. App. 4th Cir. 2012) (where the record contains sufficient evidence to decide the issue, an ineffective assistance of counsel claim may be addressed on direct appeal in the interest of judicial economy) (citing State v. Peart, 621 So.2d 780 (La. 1993)).  To whatever extent Thomas may claim that his failure to assert the claims on direct appeal was somehow attributable to his appointed state appellate counsel, that claim as a cause to overcome procedural default has not been exhausted.  Thomas has not asserted in any state court or in this court that his state appellate counsel was ineffective in any way, much less ineffective for failing to raise claims of ineffective assistance of trial counsel on direct appeal.   Any claim in that procedural posture would not state a cause sufficient to overcome the procedural bar.  Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . ..").

To the extent Thomas's claims were more appropriately raised on state post-conviction review, which is allowed by the Louisiana courts, he still has not shown any cause that would overcome his untimely pursuit of state court post-conviction review.  As noted above, he has not alleged any State-imposed impediment to his ability to do so.

20

He also has not alleged or shown that the imposition of the bar was the result of an error by his state appellate counsel or the absence of counsel in a collateral review proceeding. Thus, without a bar attributable to counsel error or the absence of counsel, it would not appear that the Supreme Court's recent holding in Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), would provide him relief from the State-imposed procedural bar.

Even if Martinez applied under the circumstances of Thomas's case, and assuming some error by counsel or the absence of counsel on collateral review, the record demonstrates that Thomas has not established a substantial claim of ineffective assistance of trial counsel that may be considered here.  In Martinez, the Supreme Court held that a State-imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 132 S. Ct. at 1320) (emphasis added).  The Supreme Court defined an "initial-review collateral proceeding" as "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial."  Id., 132 S. Ct. at 1315, 1317.  A substantial claim of ineffective assistance of counsel is one that has merit.  Garza v. Stephens, 738 F.3d 669, 676 (5th Cir. 2013) (citing Martinez, 132 S. Ct. at 1318).

Because his claims are without merit, Thomas has not established cause to overcome the procedural bar imposed by the state courts on collateral review.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

In this case, Thomas's lengthy and repetitive assertions may be summarized as one general allegation: his criminal trial counsel failed adequately to investigate and discover the evidence uncovered through his family's wrongful death civil action which could have been used in the criminal trial to discredit the State's witnesses and show that the accident occurred in a poorly lit and poorly marked or unmarked construction zone, all of which caused the accident that led to his daughter's death. While these matters were surely relevant to comparative fault in his civil action, nothing he presents now establishes that he was prejudiced under Strickland or that, but for counsel's alleged failings, he would not have been found guilty of vehicular homicide.

24

As discussed by the state courts on direct appeal and post-conviction review, at the time of Thomas's accident, vehicular homicide was defined in relevant part under La. Rev. Stat. § 14:32.1 as the killing of a human being caused proximately or directly by a person's operation or physical control of a motor vehicle, whether or not the person had the intent to cause death or great bodily harm, when the person's blood alcohol concentration is 0.08% or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.  To convict under this provision, the State had to prove beyond a reasonable doubt that Thomas's unlawful blood alcohol concentration combined with his operation of the vehicle caused the death of his daughter.  See State v. Gibson, 693 So.22d 286, 290 (La. 1997); State v. Taylor, 463 So.2d 1274 (La. 1985). The State, however, did not have to prove that Thomas's intoxication was the sole cause of the accident.  State v. Martin, 539 So.2d 1235, 1239 (La. 1989); State in the Interest of R.V., 82 So.3d 402, 410-11 (La. App. 5th Cir. 2011).  Instead, the driver's intoxication need only have been a contributing factor that led to the death.  State in the Interest of R.V., 82 So.3d at 410.

At Thomas's trial, even in the absence of the later discovered evidence, the jury was presented with ample evidence that the road where the accident occurred was under construction, including proof of the limited lighting, a large bump in the road and a milled area which had been grinded and chopped by a machine for resurfacing.  Thomas,

938 So.2d at 173.  Thomas's counsel cross-examined the State's witnesses about the placement of the few warning signs and the location of the bump or tapered area leading to the re-surfaced roadway in relation to the sign and the accident.  Id.  Defense counsel questioned the State's witnesses about Thomas's vehicle being top-heavy and more difficult to control under adverse circumstances.

Even if defense counsel had the additional evidence, pictures, diagrams and contracts to bolster the defense's theory, none of this new evidence would have changed the fact that the jury heard other crucial and critical evidence of Thomas's guilt.  The State's evidence was amply sufficient to prove beyond a reasonable doubt that Thomas's operation of his vehicle while his blood alcohol count was three times that of the statutory benchmark of .08% contributed to the crash that killed his daughter.

The still-undisputed evidence showed that, two hours after the accident, Thomas's blood alcohol count of .24% was three times the presumptive legal limit.  Id. at 174.  A medical expert testified before the jury that Thomas's blood alcohol count would have been much higher at the time of the accident two hours earlier, and that his blood alcohol levels at that rate would have undoubtedly changed his reaction time and caused confusion and visual disturbance, such as double vision and blurriness, all of which would have increased by 40-45% the likelihood of Thomas having a fatal accident.  Id.

Thomas has not alleged that his counsel could have located any evidence through additional investigation that would have rebutted these findings or disclosed any evidence favorable to the defense on these crucial issues.  "'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> <u>specificity</u> what the investigation would have revealed <u>and</u> <u>how</u> <u>it</u> <u>would</u> <u>have</u> <u>altered</u> <u>the</u> <u>outcome</u> <u>of</u> <u>the</u> <u>trial</u>.'" <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998) (emphasis added, citation omitted); <u>Druery v. Thaler</u>, 647 F.3d 535, 541 (5th Cir. 2011).

The jury's findings were consistent with the other evidence, including the new evidence addressed by Thomas, showing that Thomas's vehicle left the highway at a high rate of speed without braking and spun counterclockwise, in a manner consistent with abrupt steering, before hitting a utility pole and flipping into a ditch.  <u>Id</u>.  Thus, even with the other evidence to add support to the defense's theory that road construction and conditions in the area contributed to the accident, the other credible evidence still demonstrated that Thomas's extreme intoxication and impaired driving was a significant cause that contributed to his daughter's death. That evidence, which remains unchallenged by Thomas, was and still is sufficient to establish beyond a reasonable doubt that he was guilty of vehicular homicide under Louisiana law.

Thus, Thomas cannot establish that, but for counsel's failure to locate and retrieve additional evidence and use it at trial, the verdict would have been different.  The new

evidence as described by Thomas simply embellishes upon other factors which also may have contributed to the accident in addition to his own severe intoxication.  As noted above, the State did <u>not</u> have to prove that his intoxication was the <u>only</u> cause of the victim's death under Louisiana law.

Thus, under the <u>Strickland</u> standards, Thomas has not presented a substantial claim of ineffective assistance of counsel or established cause to overcome the procedural bar to review of his claims under <u>Martinez</u> and <u>Trevino</u>.  <u>See</u> <u>Canales v. Stephens</u>, 765 F.3d 551, 568 (5th Cir. 2014) (claim of ineffective assistance of trial counsel was not substantial under <u>Strickland</u> and did not establish cause to overcome State-imposed procedural bar).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

## C.   <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing

Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."   Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Thomas presents no argument and the record contains nothing establishing his actual innocence on the underlying conviction for vehicular homicide.  On the contrary, the undisputed fact of his severe intoxication was sufficient to establish his guilt under applicable state law.  For these reasons, he has failed to overcome the procedural bar, and his claims must be dismissed with prejudice as procedurally barred.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Thomas's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[39]

New Orleans, Louisiana, this _____4th_____ day of June, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[39]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

30